UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| NORTHSTAR BUSINESS ENTERPRISES, LLC and L. LONDELL MCMILLAN,<br><br>        Plaintiffs,<br><br>v.<br><br>SHARON NELSON,<br><br>        Defendant, | Case No. 24-CV-3492 (NEB/DTS)<br><br><br>ORDER ON MOTION TO DISMISS, FOR JUDGMENT ON THE PLEADINGS, OR TO STAY PROCEEDINGS |
| SHARON NELSON, NORRINE NELSON, individually, and BREANNA M. NELSON and ALLEN D. NELSON, in their capacity as co-trustees of the John R. Nelson Revocable Trust,<br><br>        Counterclaim-Plaintiffs,<br><br>v.<br><br>NORTHSTAR BUSINESS ENTERPRISES, LLC, L. LONDELL MCMILLAN, and CHARLES SPICER, JR.,<br><br>        Counterclaim-Defendants. | |

This case relates to the long-running dispute over the estate of music legend Prince Rogers Nelson, known professionally as Prince. NorthStar Business Enterprises, LLC ("NorthStar LLC") and L. Londell McMillan sued Prince's sister, Sharon Nelson, to recover money advanced to her during the probate of Prince's Estate, among other claims. Sharon Nelson and other heirs to Prince's Estate (together, "Nelsons")

counterclaim against NorthStar, McMillan, and Charles Spicer (together, "NorthStar"), challenging the validity of two agreements that the parties entered during the probate proceedings. NorthStar now moves to dismiss, for judgment on the pleadings, or in the alternative, to stay the counterclaims. For the reasons below, the motion (ECF No. 64) is granted in part and denied as moot in part.

## BACKGROUND[1]

Prince Rogers Nelson passed away in April 2016. (ECF No. 44 ("ACC") ¶ 18.) Prince's Estate was subject to probate proceedings in Carver County, Minnesota District Court, No. 10-PR-16-46 ("Probate Court"). His assets were distributed equally to his six siblings under Minnesota's intestacy statute, Minn. Stat. § 524.2-101 *et. seq.* (*Id.* ¶¶ 19–20). This action involves three of those heirs: Sharon Nelson, Norrine Nelson, and John R. Nelson[2] ("Heirs"). (*Id.* ¶¶ 13–15, 19–20.)

After Prince's passing, McMillan contacted the Heirs and told them that he was Prince's prior attorney and friend. (*Id.* ¶¶ 23–24.) McMillan became their trusted business

---

[1] The Court draws the following background from the Amended Counterclaim, accepting as true all factual allegations and drawing all reasonable inferences in the Nelsons' favor as the nonmovants. *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014).

[2] John R. Nelson passed away in 2021, after transferring his interest in the Estate to the John R. Nelson Revocable Trust. (ACC ¶ 168.) Two co-trustees of the Trust are counterclaim-plaintiffs Breanna Nelson and Allen D. Nelson. The third co-trustee, Johnny Nicholas Nelson, is not a counterclaim-plaintiff.

2

and legal advisor.[3] (*Id.* ¶ 26.) McMillan, who has experience in the music industry, was also retained as an advisor to the Estate itself, through an agreement with the Special Administrator appointed by the Probate Court. (*Id.* ¶¶ 28–29.)

During the probate of the Estate, the parties entered into three agreements: the NorthStar Agreement, the Expectancy Agreement, and the Prince Legacy Operating Agreement.

*The NorthStar Agreement.* In or around January 2017, McMillan, with Spicer's help, persuaded the Heirs to sign the NorthStar Agreement. (*Id.* ¶¶ 51, 53–54.) The NorthStar Agreement appointed McMillan and NorthStar as the Heirs' exclusive business advisors and managers and stated that McMillan would provide the Heirs with legal services. (*Id.* ¶¶ 60, 78–79.) The NorthStar Agreement also permitted McMillan to hire and compensate Spicer. (ECF No. 44-1 ¶ 2(c).) McMillan and Spicer allegedly advised the Heirs to keep the NorthStar Agreement's terms confidential, leading the Heirs to believe they could not seek independent legal advice about the NorthStar Agreement. (ACC ¶¶ 71–73.)

*The Expectancy Interest Transfer Agreement ("Expectancy Agreement").* The probate proceeding dragged on for years. Knowing the Heirs' desire to close the Estate, McMillan and Spicer allegedly represented that the Heirs needed to transfer ownership interest in the Estate to them so that the Estate could be distributed faster. (*Id.* ¶ 130.)

---

[3] McMillan and NorthStar LLC provided Sharon Nelson with funds during the probate of the Estate. McMillan and NorthStar LLC brought this action to recover those funds. (ECF No. 1.)

3

The Expectancy Agreement transferred to McMillan and Spicer each a ten-percent interest in the Heirs' interest in the Estate. (*Id.* ¶¶ 127, 140.) McMillan and Spicer allegedly represented to the Heirs that the Expectancy Agreement would fully compensate McMillan and Spicer for their "past and present work on behalf of [the Heirs] in connection with the Estate." (*Id.* ¶ 149; ECF No. 44-2 at 1.) They allegedly did not explain that the Expectancy Agreement granted significant authority and a beneficial interest in the Estate to McMillan and Spicer. (ACC ¶ 152.)

McMillan sent the draft Expectancy Agreement to Sharon Nelson and Norrine Nelson on February 18, 2021, warning to keep it "confidential" in order to not "violate any Court Order," and allegedly insisting that it be signed immediately. (*Id.* ¶¶ 132, 135.) McMillan and Spicer did not advise the Heirs to seek separate, independent legal counsel to review the agreement. (*Id.* ¶¶ 136, 138.) Sharon signed the Expectancy Agreement the next day, without having independent counsel review it. (*Id.* ¶ 142.) Norrine also signed the Expectancy Agreement, on behalf of herself and as "Attorney-in-Fact" for John[4], without independent counsel's review. (*Id.* ¶ 144.)

In March 2021, McMillan submitted the Expectancy Agreement to the Probate Court, requesting that McMillan and Spicer be recognized as "interested persons" in the Estate under Minnesota Statute Section 524.1-201. (*Id.* ¶ 158; ECF Nos. 29-1 at 76–77.)

---

[4] When the Expectancy Agreement was executed, John Nelson allegedly held no interests in the Estate because he had transferred his expectancy interests to the John R. Nelson Revocable Trust. (ACC ¶ 146.)

4

McMillan submitted his declaration representing that all parties were represented by counsel, that the Heirs' counsel had certified that he had reviewed the transfer, and that the "parties entered into the transfer in good faith, with consideration, and the sale is now complete." (ECF No. 73-1 ¶ 4; *see* ACC ¶¶ 161–62.) The Probate Court granted the unopposed motion. (ECF No. 29-1 at 79–80.)

*Prince Legacy LLC Operating Agreement*. In February 2022, the Probate Court directed all interested persons to form two holding companies so that the Estate assets could be distributed. (ACC ¶¶ 173–74.) Sharon Nelson, Norrine Nelson, the John R. Nelson Revocable Trust ("Trust"), McMillan, and Spicer formed Prince Legacy LLC. (ECF No. 33.) They assigned their combined fifty-percent interest in the Estate to Prince Legacy and vested management of Prince Legacy in "Managing Members" McMillan and Spicer. (*Id.* ¶¶ 1.2, 2.1(a), 6.1.) They signed the Prince Legacy LLC Operating Agreement in July 2022. (ACC ¶ 188.) In August, fifty percent of the Estate assets was distributed to Prince Legacy. (*Id.* ¶ 194.)

After signing the Operating Agreement, the remaining Heirs allegedly became concerned with McMillan's and Spicer's management of the Prince Legacy assets. (*Id.* ¶ 199.) They retained legal counsel to review the agreements and allegedly discovered that McMillan and Spicer had engaged in fraudulent, self-interested transactions to take advantage of the Heirs. (*Id.* ¶ 209.)

5

In 2024, McMillan and Spicer brought an action in the Delaware Court of Chancery against the Nelsons (*i.e.*, Sharon Nelson, Norrine Nelson, and two co-trustees of the Trust) for claims related to the interpretation and validity of the Prince Legacy Operating Agreement[5] in *McMillan v. Nelson*, C.A. No. 2024-0016-KSJM, (Del. Ch. Ct.). (*See id.* ¶ 93; *id.* at 46 n.7; *see* ECF No. 71-3.) The Nelsons filed a counterclaim in Delaware. (*See* ECF No. 71-3.)

Also in 2024, McMillan and NorthStar LLC filed this action to recover funds provided to Sharon Nelson during the probate proceeding. (ECF No. 1.) Sharon Nelson answered the complaint, and the Nelsons brought counterclaims against NorthStar (*i.e.*, NorthStar LLC, McMillan, and Spicer). (ECF No. 14.) The Amended Counterclaim asserts twelve counts: fraudulent inducement as to the NorthStar Agreement (Count I) and Expectancy Agreement (Count II), breach of fiduciary duty (Count III), constructive fraud as to NorthStar Agreement and Expectancy Agreement (Count IV), unjust enrichment (Count V), declaratory judgment (Count VI), negligent misrepresentation as to the NorthStar Agreement (Count VIII)[6] and the Expectancy Agreement (Count IX), aiding and abetting fraud (Count X), civil conspiracy (Count XI), rescission of the Expectancy Agreement based on mutual mistake (Count XII), and undue influence (Count XIII).

---

[5] The Prince Legacy Operating Agreement is governed by Delaware law. (ECF No. 33 ¶ 13.6.)

[6] The Amended Counterclaim omits Count VII.

## ANALYSIS

### I.     Legal Standard

NorthStar now moves to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, or in the alternative, for a motion to stay.[7] Rule 12(b)(6) requires the Amended Counterclaim to "contain 'enough facts to state a claim to relief that is plausible on its face.'" *Horras v. Am. Cap. Strategies, Ltd.*, 729 F.3d 798, 801 (8th Cir. 2013) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court may consider documents necessarily embraced by the Amended Counterclaim, as well as "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, [and] orders" in considering the Rule 12(b)(6) motion without converting it into one for summary judgment. *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017) (citation omitted).

### II.    *Rooker-Feldman* Doctrine

NorthStar first argues that counterclaims seeking to invalidate the Expectancy Agreement (Counts II–VI, IX–XIII) should be dismissed under the *Rooker-Feldman* doctrine.[8] Under this doctrine, lower federal courts are precluded from exercising

---

[7] To the extent that NorthStar moves for judgment on the pleadings under Rule 12(c), the motion is inappropriate because the Amended Counterclaim has not been answered. Fed. R. Civ. P. 12(c) ("After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings.").

[8] *Rooker v. Fid. Tr. Co.*, 263 U.S. 413 (1923), and *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983).

7

jurisdiction over "actions seeking review of, or relief from, state court judgments"—here, the May 3, 2021 Probation Order recognizing McMillan and Spicer as interested persons under Minnesota law. *Hageman v. Barton*, 817 F.3d 611, 614 (8th Cir. 2016) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291–93 (2005)). The *Rooker-Feldman* doctrine applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* at 615 (citation omitted). "[A] federal claim is based on a complaint of injury caused by a state-court judgment, and thus an appeal of such judgment, . . . if the state and federal claims are 'inextricably intertwined.'" *Robins v. Ritchie*, 631 F.3d 919, 925 (8th Cir. 2011) (citing *Feldman*, 460 U.S. at 482 n.16). Federal claims and state-court claims are inextricably intertwined "if the federal claims can succeed only to the extent the state court wrongly decided the issues before it." *Id.*

The Eighth Circuit has "distinguished claims attacking the decision of a state court from those attacking an adverse party's actions in obtaining and enforcing that decision." *MSK EyEs, Ltd. v. Wells Fargo Bank, Nat'l Ass'n*, 546 F.3d 533, 539 (8th Cir. 2008). "If a federal plaintiff presents some independent claim, albeit one that denies a legal conclusion that a state court has reached . . . then there is jurisdiction." *Kvalvog v. Park Christian Sch., Inc.*, 66 F.4th 1147, 1152 (8th Cir. 2023) (citing *Exxon Mobil Corp.*, 544 U.S. at 293).

The parties dispute whether invalidating the Expectancy Agreement would contradict the Probate Court's Order. In that order, the Probate Court granted McMillan's unopposed motion to recognize McMillan and Spicer as "interested persons" under Minnesota Statute Section 524.1-201.[9] (ECF No. 29-1 at 79–80); *see Parker L. Firm v. Travelers Indem. Co.*, 985 F.3d 579, 584 (8th Cir. 2021) ("*Rooker-Feldman* applies to state court judgments that are not yet final." (citation omitted)). NorthStar contends that if this Court were to rule that the Expectancy Agreement is void *ab initio*, it would reverse the Probate Court's ruling that Spicer and McMillan are interested parties. The Nelsons maintain that they do not seek review of the Probate Court's Order.

NorthStar is correct: a judgment that rescinds or voids the Expectancy Agreement would conflict with the Probate Court's Order recognizing McMillan and Spicer as interested persons under Minnesota Statute Section 524.1-201. Thus, the "claim for recission is inextricably intertwined with the state court [order recognizing McMillan's and Spicer's interests in the Estate], and, under *Rooker-Feldman*, the Court lacks subject-matter jurisdiction to hear this claim." *Hume v. Poskaitis*, No. 23-CV-03176-SK, 2024 WL 1236655, at *8 (N.D. Cal. Jan. 22, 2024) ("[I]n order to grant Plaintiff's requested relief for

---

[9] The one-page Probate Court Order does not mention the Expectancy Agreement, but McMillan's motion sought an order recognizing he and Spicer as interested persons "by virtue of their partial acquisition of Sharon Nelson's inheritance expectancy in the Estate of Prince Rogers Nelson." (ECF No. 29-1 at 76; *see* ACC ¶ 166.) McMillan's supporting declaration also referred to and attached a redacted version of the Expectancy Agreement. (*See* ACC ¶¶ 159–62; ECF No. 73-1 at 4–17.)

9

his partial contract recission claim, the Court would be required to void or set aside the [state court judgment and order] that permitted the Parents to record the grant deed.").

Counterclaim Count XII seeks rescission of the Expectancy Agreement,[10] and so is dismissed for lack of subject-matter jurisdiction. (ACC ¶¶ 334–45.) Counterclaim Count XIII seeks to void both the Expectancy Agreement and NorthStar Agreement based on McMillan's and Spicer's undue influence. (*Id.* ¶¶ 346–56). Count XIII is dismissed to the extent it seeks to void the Expectancy Agreement.

The Court also lacks subject-matter jurisdiction over Counts II–VI and IX–XI to the extent that they seek to rescind or void *ab initio* the Expectancy Agreement. But these counterclaims also seek damages or disgorgement based on the alleged misconduct of NorthStar. (*See* ACC ¶¶ 250 (Count II, damages), 262 (Count III, damages), 270 (Count IV, damages), 277 (Count V, disgorgement), 286 (Count VI, disgorgement), 314 (Count IX, damages), 324 (Count X, damages), 333 (Count XI, damages).) At oral argument, NorthStar maintained that these damages claims flow from the claims to invalidate the Expectancy Agreement, and so the Court lacks jurisdiction over them as well. The Court disagrees.

---

[10] Counterclaim Count XII seeks rescission based on mutual mistake, asserting that the Expectancy Agreement is void because at the time Norrine Nelson signed the agreement as John Nelson's attorney-in-fact, his expectancy interest in the Estate was the property of the Trust. (ACC ¶¶ 334–45.)

Claims that McMillan's and Spicer's interests in the Estate were obtained by fraud and other malfeasance were not addressed by the Probate Court. Such claims attack McMillan's and Spicer's "actions in obtaining" the Probate Court's Order, and are not barred by *Rooker-Feldman*. *MSK EyEs, Ltd.*, 546 F.3d at 539. The Court therefore retains jurisdiction over Counterclaims Counts II–VI and IX–XI to the extent that they seek damages and disgorgement based on McMillan's and Spicer's alleged misconduct relating to the Expectancy Agreement. *See Kvalvog*, 66 F.4th at 1152 (holding that jurisdiction exists over *independent claims* that "den[y] a legal conclusion that a state court has reached").

### III.    Motion to Stay

NorthStar moves to dismiss the remaining claims based on Rule 12(b)(6), and move in the alternative to stay this action pending the outcome of the parties' pending claims in the Delaware Court of Chancery.

The Court has inherent power to stay proceedings to control its docket. *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *Sierra Club v. U.S. Army Corps of Eng'rs*, 446 F.3d 808, 816 (8th Cir. 2006) ("A district court has broad discretion to stay proceedings when appropriate to control its docket." (citation omitted)). To evaluate a motion to stay, the Court considers "the conservation of judicial resources, maintaining control of the court's docket, providing for the just determination of cases, as well as the potential for duplicative efforts and wasted resources of the parties[,] and hardship to the party

opposing the stay." *Tovar v. Essentia Health*, 342 F. Supp. 3d 947, 956–57 (D. Minn. 2018). The moving party has the burden to establish the need for the stay. *Id.* at 957. On balance, the Court concludes a stay is warranted.[11]

The Amended Counterclaim asserts that NorthStar engaged in a years-long scheme to defraud the Nelsons in connection with the NorthStar Agreement and the Expectancy Agreement. The same factual allegations are also before the Delaware Court of Chancery. *See Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007) (courts may take judicial notice of state court records). The Nelsons filed a counterclaim in that court alleging a pattern of fraud in connection with the NorthStar Agreement, the Expectancy Agreement, and the Prince Legacy Operating Agreement, and asserting claims relating to the Operating Agreement.[12] (ECF No. 71-1 at 66–165.) If the Delaware court finds that the fraud allegations are true, it may rescind the Operating Agreement. Such findings and

---

[11] Because the Court relies on its inherent power to stay proceedings to control its docket, it does not reach NorthStar's arguments for stay based on the federal-court abstention doctrines of *Younger v. Harris*, 401 U.S. 37 (1971), and *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976).

[12] The Nelsons' counterclaim in the Delaware action asserts eight counts over the Prince Legacy Operating Agreement, including equitable fraud, fraudulent inducement/ misrepresentation/ omission, aiding and abetting fraud, civil conspiracy, breach of fiduciary duty to clients and LLC members, declaratory judgment, and breach of contract. (ECF No. 71-1 at 66–165.) Among other relief, the counterclaim seeks to rescind the Prince Legacy Operating Agreement. (*Id.* at 164.)

conclusions will inform this Court on the counterclaims pertaining to the NorthStar Agreement[13] and the Expectancy Agreement.

Alternatively, if the Delaware court upholds the Operating Agreement, the Expectancy Agreement may merge with the Operating Agreement under that agreement's merger provision. *See Alpha Real Est. Co. of Rochester v. Delta Dental Plan of Minn.*, 664 N.W.2d 303, 312 (Minn. 2003) ("[A] merger clause establishes that the parties intended the writing to be an integration of their agreement."). Such merger would impact the Nelsons' counterclaims based on the Expectancy Agreement, possibly mooting them. Even if the Expectancy Agreement does not merge with the Operating Agreement[14], both agreements: (1) assign to McMillan and Spicer each ten percent of the

---

[13] At oral argument, NorthStar's counsel represented that his clients waived their rights under the NorthStar Agreement. At a minimum, because the Nelsons seek disgorgement of funds received under the NorthStar Agreement, the counterclaims relating to the NorthStar Agreement remain pending regardless of this waiver. (*E.g.*, ACC ¶ 277 (asserting an unjust enrichment claim (Count V) based on fraudulent inducement and seeking "all benefits McMillan and Spicer have received . . . as a result of the NorthStar Agreement").) The Court does not reach arguments about whether these counterclaims are barred by Minnesota's six-year statute of limitations, or whether the statute of limitations was tolled. (*Compare* ACC ¶ 57 (NorthStar Agreement signed Jan. 20, 2017), *with* ECF No. 14 (Counterclaim filed Oct. 11, 2024)); *see* Minn. Stat. § 541.05; *TCF Nat'l Bank v. Mkt. Intel., Inc.*, 812 F.3d 701, 707 (8th Cir. 2016) ("[T]he limitations period begins to run 'when the facts constituting fraud were discovered or, by reasonable diligence, should have been discovered.'" (citation omitted)).

[14] The Nelsons maintain that the Expectancy Agreement falls outside the scope of the merger provision in the Prince Legacy Operating Agreement. *See Core & Main, LP v. McCabe*, 62 F.4th 414, 419–20 (8th Cir. 2023) (instructing that in considering an agreement's merger or integration provision, courts are to determine whether the prior agreement is "within the scope" of the integrated agreement).

Heirs' fifty-percent interest in the Estate; and (2) provide that the management decisions related to the Heirs' interests in the Estate will be made by McMillan and Spicer. (ECF No. 33 §§ 3.2, 6; ECF No. 44-2 ¶¶ 1–2, 5.) If the Nelsons lose the counterclaim in the Delaware Court of Chancery, McMillan's and Spicer's interests in and their rights to manage Prince Legacy will have been upheld by that court.

On balance, the Court finds that conserving judicial resources, maintaining control of it docket, providing for the just determination of cases, and avoiding duplicative efforts and wasted resources outweigh any hardship to the Nelsons. The Court therefore stays the case pending resolution of the Delaware action.

As for the NorthStar's motion to dismiss, aside from the *Rooker-Feldman* issue addressed above, the Court denies the motion to dismiss as moot without prejudice. It will wait until the Delaware action has concluded because, as explained above, that action will impact future motions that the parties may bring.

## CONCLUSION

Based on the above and on all the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. The Motion to Dismiss, for Judgment on the Pleadings, or Stay (ECF No. 64) is GRANTED IN PART and DENIED AS MOOT IN PART as set forth above; and

2. The motion to stay this action pending the resolution of *McMillan v. Nelson*,

C.A. No. 2024-0016-KSJM, (Del. Ch. Ct.), is GRANTED.

Dated: June 23, 2025                    BY THE COURT:

                                                 s/Nancy E. Brasel
                                                 Nancy E. Brasel
                                                 United States District Judge